UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAFESPAN PLATFORM SYSTEMS, INC.,
et al.,

                              Plaintiffs,

                                                    **Hon. Hugh B. Scott**

            v.                                      06CV726A

                                                    **Report
                                                    &
                                                    Recommendation**

EZ ACCESS, INC., et al.,

                              Defendants.

_____

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 5; see also text minute entry Mar. 24, 2010, continuing discovery before

undersigned).  The instant matters before the Court are two motions by plaintiffs.  The first

motion is plaintiffs' motion for partial summary judgment dismissing defendants' co-

inventorship defense (Docket No. 100[1]), paragraph (b) of defendants' Third Affirmative Defense

asserted in their Second Amended Answer (Docket No. 91).  Plaintiffs here also seek

_____

[1]In support of their motion, plaintiffs submit the declaration of Lambros Apostolopoulos
(with exhibits), Docket No. 101; their attorney's declaration (with exhibits), Docket No. 102;
their Statement of Facts, Docket No. 103; their Memorandum of Law, Docket No. 104; their
further Memorandum, Docket No. 108; their further Reply, Docket No. 137; the Declaration of
counsel (with exhibits), Docket No. 138; their Reply Statement of Facts, Docket No. 139.
       In opposition, defendants submit their Memorandum of Law in opposition, Docket
Nos. 120, 125 (copy of Memorandum); the Affirmation of defense counsel Linda Joseph (with
exhibits), Docket No. 121; the Affirmation of defense counsel Alicia Rood, Docket No. 122; and
their Response to Plaintiffs' Statement of Undisputed Material Facts (hereinafter "Defs. Counter
Statement–Co-Invention"), Docket No. 123; their Memorandum in Opposition, with attached
attorney's affirmation and exhibits, Docket No. 145.

declarations that defendant Anastasios Hatsios, Vasilios Kozaris, and James Makarikas are not co-inventors of the inventions claimed in the patents-in-suit, and hold that the sole inventor, Lambros Apostolopoulos, did not engage in fraud upon the United States Patent and Trademark Office (or "PTO") (id. at second unnumbered page).

The second motion is plaintiffs' motion for partial summary judgment dismissing so much of defendants' Third Affirmative Defense concerning the novelty and non-obviousness of the patents at issue and dismissing their Sixth and Tenth Affirmative Defenses (Docket No. 109[2]).

Defendants amended their Answer (among other reasons) to assert their Third Affirmative Defense (see Docket Nos. 67 (motion to amend Answer), 78 (second motion to amend Answer), 91 (corrected Second Amended Answer); see also Docket No. 51 (Amended Answer); cf. Docket No. 93 (Plaintiffs' Answer to amended Counterclaim)).  Plaintiffs moved to dismiss defendants' affirmative defense (including ones asserting co-invention) (Docket No. 64) and resisted defense efforts to amend (see, e.g., Docket No. 83).  After the Court allowed defendants to amend their Answer (Docket No. 89), this Court issued a Report &

---

[2]In support of this motion, plaintiffs submit the declaration of Apostolopoulos (with exhibits), Docket No. 110; their attorney's declaration (with exhibits), Docket No. 111; their Statement of Facts, Docket No. 112; their Memorandum of Law, Docket No. 113; their attorney's Declaration (with exhibits), Docket No. 141; their further Statement of Facts, Docket No. 142; their Reply, Docket No. 143.

In opposition, defendants submit their Memorandum of Law in opposition to this motion, Docket No. 126; the Affirmations of defense counsel Linda Joseph, Docket Nos. 127, 128, with exhibits, Docket Nos. 127, 128-31; and their Response to Plaintiffs' Statement of Undisputed Material Facts (hereinafter "Defs. Counter Statement–Novelty"), Docket No. 132; their Memorandum in Opposition, with attached attorney's affirmation and exhibits, Docket No. 145.

Recommendation (Docket No. 107) recommending denial of plaintiffs' motion to dismiss the

earlier version of the Answer, which was adopted by Judge Arcara (Docket No. 119).

For the first motion for summary judgment, responses initially were due by March 9,

2011, with any replies due by March 23, 2011 (Docket No. 106).  Defendants at first did not

respond to this motion, as noted by plaintiffs (Docket No. 108).  Defendants then moved for an

extension (nunc pro tunc) of time to respond to this motion (Docket No. 115; cf. Docket No. 117,

plaintiffs' response), which was granted (Docket No. 118).  Now, both of plaintiffs' motions for

partial summary judgment had responses due by April 12, 2011, with any replies due by April 27,

2011, and the motions eventually were argued on May 25, 2011 (Docket Nos. 118, 146; see also

Docket Nos. 134, 136), and the motions were deemed submitted.

Familiarity with the procedural history of this action, including prior Reports &

Recommendations (Docket Nos. 77, 107) and Orders regarding those Reports (Docket Nos. 92,

119) and those Orders relevant to defendants' motion for leave to amend (Docket Nos. 88, 89) is

presumed.

## BACKGROUND

This is a patent infringement action arising from the design and marketing of a certain

bridge platform.  Plaintiffs asserted that defendants infringed upon two patents plaintiffs held for

a bridge platform (Docket No. 1, Compl. (referring to United States Patent Number 6,135,240

("the '240 patent") and United States Patent Number 6,302,237 ("the '237 patent")).  These

patents "relate to bridge platforms which are erected beneath the deck of an existing bridge to

support workers performing maintenance or other work on the bridge structure.  The bridge

platform system involves individual flooring panels that are laid upon horizontal cables that

3

extend beneath the bridge." (Docket No. 54, Order from Markman[3] proceeding, Jan. 14, 2010, at 1-2.) Defendants answered and asserted defenses (among others) that the patents were unenforceable and were not infringed and counterclaimed for a declaratory judgment as to the invalidity of plaintiffs' patents and whether an infringement of the '237 patent had occurred (Docket No. 3). Plaintiffs replied to the Answer's Counterclaims (Docket No. 7).

After the Markman hearing before Judge Arcara (text minute entry May 13, 2009; see Docket No. 54), the parties stipulated to the filing of an Amended Complaint (Docket No. 49), which plaintiffs filed on June 23, 2009 (Docket No. 50). The Amended Complaint alleges infringement of the '240 patent (Docket No. 50, Count I) and of the '237 patent (id., Count II), seeking a declaration that both patents are valid and enforceable, enjoining defendants' infringement of these patents, as well as damages, costs, fees, and recall and destruction of infringing products (id. at page 6). Defendants answered the amended pleading on July 15, 2009 (Docket No. 51), denying any infringement or that the patents were valid and enforceable (id., Second, Third Affirmative Defenses). Defendants claimed that they independently designed and invented the devices in question (id., Fifth Affirmative Defense). They asserted counterclaims for declaratory judgment against the validity of the patents (id. at pages 8-10). Plaintiffs, in turn, answered these counterclaims on July 23, 2009 (Docket No. 52), including raising a defense that defendants' unenforceability allegations failed to comply with Rule 9(b) and its particularity requirements for alleging fraud (id. First Defense).

---

[3]Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).

*Plaintiffs' Motion to Dismiss Defenses and Counterclaims*

Plaintiffs initially sought to dismiss defendants' Third Affirmative Defense (asserting that the patents are not enforceable) and their two counterclaims (Docket No. 64), insofar as they relate to unenforceability (Docket No. 64, Pls. Memo. at 2).  Plaintiffs argued that defendants' contentions of false statements to the Patent Examiner (see id. at 2-3; Docket No. 51, Am. Ans. Third Affirmative Defense subpara. e., f.) were not pled with particularity under Federal Rule of Civil Procedure 9(b) (Docket No. 64, Pls. Memo. at 4).  As noted below, this motion was denied (Docket Nos. 107, Report & Recommendation; Docket No. 119, Order (adopting Report & Recommendation)).

*Defendants' Motion to Amend the Answer and the Second Amended Answer*

After further motion practice alluded to above, defendants moved to amend their Answer (Docket No. 78) and leave was so granted (Docket No. 89).  Pertinent to plaintiffs' present motions, in their Second Amended Answer (Docket No. 91) defendants assert as part of their Third Affirmative Defense that plaintiffs obtained these patents in violation of the patent statute and by fraud and misrepresentation.  Defendants contend that others (namely Hatsios, Kozaris, and Makarikas) invented these devices with plaintiffs.  Defendants assert that plaintiffs misrepresented who in fact invented these devices in patent applications submitted in 1995, 1997, 1999, and 2000, and that plaintiff Apostopolous knew that his statement of sole inventorship for these two patents was false and that plaintiffs knew of the contributions of Hatsios, Kozaris, and Makarikas but failed to acknowledge them.  (Docket No. 91, 2d Am. Ans. at page 4.)

In dismissing plaintiffs' initial motion to dismiss defendants' Amended Answer, this Court noted that the Second Amended Answer rendered plaintiffs' motion moot (Docket No. 107, Report & Rec. at 6, 7) and that the motion to dismiss standard differs from the standard for granting leave to amend a pleading (id. at 7).  Where the initial motion to dismiss was directed to the particularity of defendants' assertion of misrepresentation, defendants had cured that defect by alleging particular dates (id.).

The Second Amended Answer asserts five defenses now attacked by plaintiffs' pending motions.  First, the Third Affirmative Defense asserts defendants' co-invention of these devices and that plaintiffs made misrepresentations to the Patent and Trademark Office about the existence of that co-invention (Docket No. 91, 2d Corrected Amended Ans. at page 4, Third Affirmative Defense b.).  That defense also asserts these patents fail to comply with 35 U.S.C. §§ 102 and 103 regarding the novelty and non-obviousness of the inventions (id., at page 3, Third Affirmative Defense a.).  That defense also asserts the unenforceability of the patents "based on prior art as will be established by the opinions of Defendant[s'] [sic] experts" (id., at page 4, Third Affirmative Defense c.).  The Sixth Affirmative Defense contends that the Patent and Trademark Office Examiner failed to cite pertinent prior art as references and thus the presumption of validity of the patents under 35 U.S.C. § 282 "is greatly weakened or destroyed" (id., at page 5).  Finally, the Tenth Affirmative Defense asserts that "the content at issue in this case is not the subject of valid patents" (id., at page 6).  (See Docket No. 113, Pls. Memo. at 1.)

*Plaintiffs' Motions for Summary Judgment*

Plaintiffs now filed their present motions for partial summary judgment to dismiss portions of defendants' Third Affirmative Defense asserting co-inventorship of the patents, as

6

well as a declaration rejecting the co-invention claims of Hatsios, Kozaris, and Makarikas, and

hold that Apostolopoulos did not engage in fraud upon the Patent and Trademark Office (Docket

No. 100; <u>see</u> Docket No. 108, Pls. Memo.), and confirming the novelty and non-obviousness of

these patents (Docket No. 109).  The latter motion also sought to dismiss defendants' Sixth and

Tenth Affirmative Defenses (<u>id.</u>; <u>cf.</u> Docket No. 91, Defs. 2d Corrected Am. Ans. at pages 5, 6).

*Defendants on Co-Invention*

First, defendants contend that plaintiffs' recitation of the material facts omitted additional

material facts that are disputed (Docket No. 123, Defs. Counter Statement–Co-Invention, at 1;

Docket No. 132, Defs. Counter Statement–Novelty, at 1).  Next, they claim that this action is

about the inventions under the '237 Patent, as plaintiffs describe as "a deck clip and the use of

corrugated decking with 'slotted holes' through which a deck clip extends to secure a cable

beneath the decking" (Docket No. 120, Defs. Memo. at 1, quoting Docket No. 101,

Apostolopoulos Decl. ¶¶ 3-4).  They assert that more than a year before plaintiffs applied for the

'237 Patent it was disclosed to Apostolopoulos that Jupiter Painting and Contracting Company

was using a cable-supported corrugated metal decking, secured by "U" shaped bolt which,

through the deck plating, from an eyelet through which a cable passed and that Kozaris

conceived of the deck clip idea (Docket No. 120, Defs. Memo. at 4, 6-7; Docket No. 123, Defs.

Counter-Statement–Co-Invention ¶¶ 1, 2; Docket No. 121, Defs. Atty. Affirm. Ex. A, Kozaris

EBT Tr. at 10-12, 15).  Defendants contend that Apostolopoulos admitted that he was present

when Kozaris conceived of the deck clip and Apostolopoulos merely drew the invention on his

computer (Docket No. 120, Defs. Memo. at 4, 9-10; Docket No. 123, Defs. Counter-

Statement–Co-Invention ¶ 4; Docket No. 121, Defs. Atty. Affirm. Ex. D, Apostolopoulos EBT

Tr. at 82).  Defendants claim that Kozaris folded a piece of paper into the shape for a deck clip (Docket No. 120, Defs. Memo. at 9; Docket No. 121, Defs. Atty. Affirm. Ex. A, Kozaris EBT Tr. at 15-16).  Defendants conclude that Apostopoulos' admission that he drew the shape formed from the folded paper design Kozaris made obviates the need to require corroboration for Kozaris' invention claim, creating a material issue of fact precluding summary judgment as to whether these events constitute co-invention or not (Docket No. 120, Defs. Memo. at 12-13; see Docket No. 126, Defs. Memo. [Novelty], at 22).

On the law, defendants argue that documentary evidence is not the sole method for corroboration to withstand a summary judgment motion on a claim of co-invention (Docket No. 120, Defs. Memo. at 2-3), see Trovan Ltd. v. Sokymat SA, 299 F.3d 1292, 1302 (Fed. Cir. 2002); Robert Bosch, LLC v. Pylon Mfg. Corp., 748 F. Supp. 2d 383, 396 (D. Del. 2010). Defendants argue that plaintiffs did not present any contemporaneous records to prove their invention in November 1994 (id. at 13-14).  By plaintiffs stating that certain witnesses were incredible, defendants conclude that summary judgment is inappropriate (id. at 17-18).

*Defendants on Novelty and Obviousness*

As for plaintiffs' motions regarding co-invention and novelty, defendants counter that they have evidence showing that another corporation, Jupiter Painting and Contracting Co., used a similar cable-supported corrugated metal decking since September 1993 as Apostolopoulos patented a year later (Docket No. 120, Defs. Memo. at 4, 15-16; Docket No. 126, Defs. Memo. at 4-6, 13-15; see Docket No. 128, Def. Atty. Affirm. ¶ 4, Ex. 3; Docket No. 129 (Ex. 3)). Defendants contend that the PTO erred in not considering the Jupiter Documents (reports published in Connecticut regarding Jupiter Painting and Contracting's bridge platforms,

8

including the "Stanton Letter," as referenced by the PTO (Docket No. 110, Apostolopoulos

Decl., Ex. G)).  Defendants claim the Jupiter Documents were publicly available documents as

prior art to deny plaintiffs their subsequent patent (Docket No. 126, Defs. Memo. at 3, 10-13).

Defendants next contend that the claims under the disputed patents are obvious under

35 U.S.C. § 103 from prior patents (Docket No. 126, Defs. Memo. at 2, 3-4, 15-19; Docket

No. 128, Defs. Atty. Affirm. Exs. 3, 7, 8, 9, 10, 11; Docket Nos. 130, 131 (exhibits cited)).

Defendants produced patents from as early as 1899 utilizing the concepts plaintiffs now claim in

their patents (see Docket No. 128, Defs. Atty. Affirm. Ex. 7, Docket No. 130 (Ex. 7)).

Defendants next argue that the patents can be invalidated because plaintiffs learned of the

claimed inventions from another, Kozaris, thus they were unable to patent them under 35 U.S.C.

§ 102(f) (Docket No. 126, Defs. Memo. at 19-21).

As for their Sixth Affirmative Defense of the PTO's failure to examine the prior art,

defendants argue that they sustained their burden of persuasion under 35 U.S.C. § 282 by

producing evidence of prior art, thus there is no reason to defer to the PTO's earlier (and, to

defendants, erroneous) finding (id. at 23-24).

Since their Tenth Affirmative Defense is based upon the arguments in support of their

Third Affirmative Defense, defendants conclude that plaintiffs' motion to dismiss either defense

should be denied (id. at 25).

Defendants also argue that the deposition testimony of Apostolos Tsourous and James

Frangos show material issues of fact exist to preclude summary judgment on either of plaintiffs'

motions (Docket No. 145, Defs. Memo. at 1).  Tsourous testified regarding the Jupiter Painting

project in Connecticut in 1993 and the public filing of its papers for that project, making the

design ultimately used by plaintiffs obvious (id. at 2-3).  The Jupiter Painting device has most of
the features of the patented devices save the deck clip, which defendants note was conceived of
by Kozaris (id. at 4).  Tsourous described the Jupiter Painting system to Frangos,
Apostolopoulos' in-law[4] (Docket No. 120, Defs. Memo. at 4; Docket No. 145, Defs. Memo. at
5), in 1995 before plaintiffs patented their inventions (Docket No. 145, Defs. Memo. at 4; see
Docket No. 120, Defs. Memo. at 4-5).  Defendants claim that this testimony further confirms that
Apostolopoulos was not the sole inventor of the device (Docket No. 145, Defs. Memo. at 11).
Defendants conclude that Judge Arcara's interpretation of independent claims 1(c) and 1(d) plus
Tsourous' testimony show an overlap between the Jupiter Painting containment system and
plaintiffs' claims.  Thus, defendants conclude that the defenses of obviousness, prior art, public
use, and novelty should not be dismissed on summary judgment (id. at 13-18).

*Plaintiffs' Reply*

Regarding co-invention, plaintiffs reply that there is no evidence that Hatsois or
Makarikas co-invented the devices (Docket No. 137, Pls. Reply Memo. on Co-Invention at 1, 4-
5).  They deny that there was documentary evidence to support the defense contention that
Kozaris conceived an aspect of the inventions (id. at 1-2, 3, 5-8).  Plaintiffs argue that defendants
needed to present clear and convincing evidence beyond Kozaris' own testimony to overcome the
presumed correctness of the inventionship for these devices (id. at 3-4).  They also deny that
Apostopoulos was given the Jupiter Documents prior to the first patent application (id. at 2, 10;
see Docket No. 143, Pls. Reply Memo. on Novelty at 5).  The testimony defendants rely upon to

---

[4]The first memorandum states that Frangos was the father-in-law of Lambros
Apostolopoulos, Docket No. 120, at 4, while the second memorandum state that he was
Apostolopoulos' brother-in-law, Docket No. 145, at 5.

the contrary involve only a discussion between Tsourous and Franges (and not Apostopoulos) (Docket No. 137, Pls. Reply Memo. on Co-Invention at 10).  Plaintiffs emphasize that conception of a patented idea is of "the complete and operative invention, as it is thereafter to be applied in practice," Cooper v. Goldfarb, 154 F.3d 1321, 1327 (Fed. Cir. 2001), and, applied on a claim-by-claim basis, Kozaris can only purport to be involved with the deck clip based upon what plaintiffs term "equivocal, cryptic and inconclusive" testimony (id. at 5-6), only a portion of the entire invention.  They contend that defendants' corroborating witness contradicted or impeached their testimony (id. at 8).

As for the obviousness of the inventions, plaintiffs reply that the PTO considered the Jupiter Documents and the secondary references to the previous patents and determined that the '237 patent was not rendered obvious (Docket No. 143, Pls. Reply Memo. on Novelty, at 3). Given the difficult burden of proving invalidity after the PTO has considered prior art, plaintiffs urge that this Court adopt the PTO's determination that the patents-in-suit are not obvious in view of the prior art cited by defendants (id. at 3-4).  Furthermore, plaintiffs object to the Jupiter Documents being cited as "public documents" when they in fact were not readily available and were not "printed publications" (id. at 4), that is not merely available for public inspection but also made accessible by cataloging or indexing, see In re Cronyn, 890 F.2d 1158, 1161 (Fed. Cir. 1989) (id. at 4-5).

On novelty, plaintiffs argue that an invention is "anticipated" under 35 U.S.C. § 102(b) only if a single prior art reference discloses the identical invention, Eastman Kodak Co. v. Agfa-Gevaert N.V., 560 F. Supp. 2d 227, 249 (W.D.N.Y. 2007) (Berenato, Spec. Master), adopted, 560 F. Supp. 2d 227 (W.D.N.Y. 2008) (Telesca, J.), aff'd, 351 Fed. Appx. 441 (Fed. Cir. 2009).

11

Here, plaintiffs state that defendants do not contend that a single prior art reference anticipated these inventions.  (Id. at 10.)

## DISCUSSION

I.      Standards– Motion for Summary Judgment

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought," Fed. R. Civ. P. 56(a) (effective Dec. 2010).  Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1318 (Fed. Cir. 2004)[5]; see also Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than

---

[5]See 28 U.S.C. § 1295(a)(1), giving the United States Court of Appeals for the Federal Circuit exclusive jurisdiction over appeals in cases arising from patents claims under 28 U.S.C. § 1338(a).

simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).  The opponent to summary judgment may argue that he cannot respond to the motion where it shows, by affidavit, "that, for specified reasons, it cannot present facts essential to justify its opposition," Fed. R. Civ. P. 56(d).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2) (effective Jan. 1, 2011).  If the opponent fails to respond, the facts stated in the movant's statement will be deemed admitted, id. R. 56(a)(2).  The movant is to submit facts in which there is no genuine issue, id. R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2).  Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in the opponent's statement, id.  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

II.     Law of Inventorship

As noted by plaintiffs (Docket No. 104, Pls. Memo. at 8-10),

13

"Inventorship is a question of law.  Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1460 (Fed. Cir. 1998).  The inventors named in an issued patent are presumed to be correct, and the burden of showing incorrect inventorship is a "heavy one" which must be proved by clear and convincing evidence.  Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997). . . .

'To meet the clear and convincing burden of proof, alleged co-inventors must prove their contribution to the conception with more than their own testimony respecting the facts surrounding a claim of derivation or priority of invention.'  Trovan, Ltd. v. Sokymat SA, 299 F.3d 1292, 1302 (Fed. Cir. 2002); Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1366-67 (Fed. Cir. 1999). '[A]n alleged co-inventor must supply evidence to corroborate his or her testimony.'  Caterpillar Inc. v. Sturman Indus., Inc., 387 F.3d 1358, 1377 (Fed. Cir. 2004), cert. denied, 545 U.S. 1114 (2005); Acromed Corp. v. Sofamor Danek Grp., Inc., 253 F.3d 1371, 1379 (Fed. Cir. 2001)."

(Id. at 8.)  Evidence "to prove prior discovery must be clear and satisfactory," Finnigan, supra, 180 F.3d at 1366, quoting Eibel Process Co. v. Minn. & Ontario Paper Co., 261 U.S. 45, 60 (1923); see Hess v. Advanced Cardiovascular Sys., Inc., 106 F.3d 976, 980 (Fed. Cir. 1997) (same standard for co-inventorship after patent has been issued) (id. at 8-9).  Further,

"'What is required is "corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." ' Thompson v. Haynes, 305 F.3d 1369, 1384 (Fed. Cir. 2002).  'Reliable evidence of corroboration preferably comes in the form of physical records that were made contemporaneously with the alleged prior invention.'  Trovan, 299 F.3d at 1302, citing Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350-51 (Fed. Cir. 2001)."

(Id. at 9.)  The Court cannot rely merely upon the testimony of the purported co-inventor absent, for example, documentation normally expected in the invention process, see Finnigan, supra, 180 F.3d at 1366; Linear Tech., supra, 379 F.3d at 1328, with corroboration of that testimony determined under a "rule of reason" analysis, Linear Tech., supra, at 1318-19 (see id. at 9-10).

"Summary judgment dismissing a joint inventorship claim is properly granted in the absence of clear and convincing evidence corroborating a purported co-inventor's testimony, and where corroborating evidence is ambiguous, inconclusive, incredible or

not significantly probative. <u>Linear Tech. Corp.</u>, 379 F.3d at 1318-19; <u>Symantec Corp. v. Computer Assocs. Int'l, Inc.</u>, 522 F.3d 1279, 1295-96 (Fed. Cir. 2008).  Of course, a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual evidence.  Fed. R. Civ. P. 56(c)."

(<u>Id.</u> at 10.)

III.    Confirming Novelty and Non-Obviousness of Patents

Under the patent law, in any challenge to the validity of a patent, the Court first presumes that the patent is valid and looks to the challenger for clear and convincing evidence to the contrary, 35 U.S.C. § 282 (Docket No. 113, Pls. Memo. at 9).  As with co-invention, the party challenging the validity of a patent bears a heavy burden of proof, again requiring clear and convincing evidence, <u>Eli Lilly and Co. v. Teva Pharms. USA, Inc.</u>, 619 F.3d 1329, 1336 (Fed. Cir. 2010); <u>Kegel Co. v. AMF Bowling, Inc.</u>, 127 F.3d 1420, 1429 (Fed. Cir. 1997); <u>Eastman Kodak Co., supra</u>, 560 F. Supp.2d at 248-49 (<u>id.</u>).

Section 102 of the patent code provides that a person is entitled to a patent unless (among other criteria) the invention was known by others in this country or patented elsewhere before the invention thereof by the applicant, 35 U.S.C. § 102(a).  Anticipation under this section requires that each and every element of the claimed invention be disclosed in a single prior art reference, <u>Eastman Kodak Co., supra</u>, 560 F. Supp.2d at 249 (<u>id.</u> at 11).

Section 103 states that "a patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior act are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains," 35 U.S.C. § 103(a).

15

IV.     Application

    A.     Dismissal of Third Affirmative Defense on Co-Invention

The issue under plaintiffs' first motion is whether the Third Affirmative Defense in the

Second Amended Answer (Docket No. 91, at 3-5; <u>cf.</u> Docket No. 51, First Amended Ans. at 5,

Third Affirm. Def. subpara. e.) should be dismissed.  Unlike plaintiffs' initial motion to dismiss a

similar asserted defense (<u>cf.</u> Docket No. 64), the basis for dismissal in the present motion is the

failure to state a claim rather than failure to particularize their misrepresentation allegation.

Plaintiffs argue that the evidence presented to support co-invention is defendant Hatsios'

self-serving testimony, that is uncorroborated, contradictory, and inconclusive (Docket No. 104,

Pls. Memo. at 11-13, <u>see</u> <u>id.</u> at 13-17 (similar comments regarding other alleged co-inventors'

testimony).  Absent documentary evidence to support their claim of co-invention, plaintiffs

conclude that the defense should be dismissed (<u>id.</u> at 18).  Defendants also do not claim co-

invention to all the features of the patented devices, instead each claiming contribution to one

element of one patent; plaintiffs conclude that this is insufficient to state a claim for co-invention

of an entire device (<u>id.</u> at 19-20).  Plaintiffs are correct, defendants fail to corroborate Hatsios'

claim of invention (as well as the claim of Makarikas as co-inventor).  Defendants only present

Hatsois' testimony which is not sufficiently corroborative to overcome the burden of proof to

establish co-invention.  Plaintiffs' motion for summary judgment as to so much of the Third

Affirmative Defense asserting co-invention by Hatsios and Makarikas should be **granted**.

Regarding the co-invention claims of Kozaris incorporated in the Third Affirmative

Defense, however, there must be more analysis.  Plaintiffs are incorrect in limiting the

corroboration of defendants' oral testimony claiming co-invention strictly to contemporaneous

documentation.  Although such documents have been held to be a preferable method of proof for corroboration, Linear Tech. Corp., supra, 379 F.3d at 1137, applying the "rule of reason analysis" to corroborate the co-inventor's testimony, the Court must evaluate "all pertinent evidence," Price v. Symsek, 988 F.2d 1187, 1195 (Fed. Cir. 1993) (emphasis in original); see Linear Tech. Corp., supra, 379 F.3d at 1327.  Courts recognize that corroborating evidence "may take many forms," Linear Tech Corp., supra, 379 F.3d at 1327, and "there is no single formula that must be followed in proving corroboration," Berry v. Webb, 412 F.2d 261, 266 (C.C.P.A. 1969).  The Federal Circuit in Linear Technology Corporation v. Impala Linear Corporation listed types of accepted corroborating evidence including circumstantial evidence and oral testimony from someone other than the alleged inventor as well as documentation, 379 F.3d at 1327.  Thus, this defense should not fail merely because it lacks contemporaneous documentation.

Here, defendants offer plaintiff Apostolopoulos' testimony as admitting Kozaris' role in the invention of the bridge deck.  While the law looks with disfavor upon invalidating patents on mere testimonial evidence, Finnigan, supra, 180 F.3d at 1366, that case discussed both the interested witness (i.e., the claimant to invention) and uninterested witnesses with potential bias or being influenced to testify in favor of the interested parties, id. at 1366-68, as reasons for looking at testimony with disfavor.  The court did not discuss a third category, the interested witness who is the holder of the patent at issue who makes a statement against his exclusive claim of invention.  A patent holder's admissions can corroborate an opposing claimant's statements, see Zenith Elecs. Corp. v. PDI Commc'n Sys., 522 F.3d 1348, 1357 (Fed. Cir. 2008). The purported admission here is that Kozaris suggested a method for designing the deck clip and Apostolopoulos liked it and drew it on the computer.  But plaintiffs note what was not testified

17

about that admission, was namely when it occurred and what was drawn (see Docket No. 137,

Pls. Reply Memo. re Co-Invention at 7).  Outside of the patent and inventionship context, this

dispute would be over a material issue of fact precluding summary judgment.  But the standards

for overcoming the presumption that the named inventor is correct or that a claimant has shown

that he or she is the co-inventor are heavy ones, in which the evidence (documentary,

circumstantial, or testimonial) has to be clear and satisfactory.  Thus, the existence of an

otherwise factual issue should preclude granting defendants relief because they failed to meet

their heavy burden of presenting clear and satisfactory evidence of their claim.  Therefore, as to

Kozaris as co-inventor, plaintiffs' motion for summary judgment dismissing so much of the

Third Affirmative Defense also should be **granted**.

     B.     Declaratory Relief

     Plaintiffs also seek affirmative declaratory relief that denies the co-invention by Hatsios,

Kozaris, and Makarikas (see Docket No. 100, Pls. Notice of Motion, at 2) and holds that plaintiff

Apostolopoulos did not engage in fraud upon the Patent and Trademark Office in filing the two

patents without mentioning the alleged co-inventors (see Docket No. 108, Pls. Memo. at second

unnumbered page).  Plaintiffs argue that any allegation of fraud on the Patent and Trademark

Office requires clear and convincing evidence of an intent to deceive, see Key Pharmaceuticals v.

Hercon Labs. Corp., 161 F.3d 709, 719 (Fed. Cir. 1998).  Since the alleged co-inventors did not

invent these devices, plaintiffs conclude that defendants' argument that Apostolopoulos

intentionally omitted them from the patent applications is without merit.  (Docket No. 104, Pls.

Memo. at 19.)

Given the recommendation above to strike this defense, plaintiffs ought to receive a declaratory judgment that Hatsois, Kozaris, and Makarikas are not co-inventors of the patented devices.  Plaintiffs' motion for declaratory judgment should be **granted in part**; namely, judgment should be declared denying co-invention.  But a declaration that plaintiffs did not defraud the PTO should **not be granted** since this involves plaintiffs' affirmative claim as to what was presented to the PTO beyond merely denying co-invention by defendants.

C.      Novelty and Obviousness

1.      Novelty

First, plaintiffs contend that anticipation under 35 U.S.C. § 102 "requires that each and every element of the claimed invention be disclosed in a single prior art reference" (Docket No. 113, Pls. Memo. at 11, citing Eastman Kodak Co., supra, 560 F. Supp. 2d at 249; Union Oil Co. v. Atlantic Richfield Co., 208 F.3d 989, 994-95 (Fed. Cir. 2000)), and defendants here did not allege that any claim in either patent is anticipated by a single prior art reference (id.). Therefore, plaintiffs conclude that defendants' § 102 invalidity defense should be dismissed (id.). Defendants point to several earlier sources leading to the patented devices, patents from 1899, the work of Jupiter Painting, and the design of the deck clip from Kozaris.

Again, given the presumptions upholding the validity of patents absent clear and convincing evidence and the claimant's heavy burden of proof, defendants have not met this burden.  There are factual disputes as to how widely available or accessible were the Jupiter Documents, the contract bid documents for a bridge maintenance job in Connecticut, to have them constitute prior art and questions whether Apostopolous ever actually had the Jupiter

19

Documents (although his in-law may have been at least familiar with them).  Therefore,

plaintiffs' motion for summary judgment on this ground also should be **granted**.

        2.      Obviousness

      Next, plaintiffs argue that defendants lack a basis to claim the patented inventions were

obvious since they cannot rely upon the Jupiter Documents that were addressed to a single

individual without attaching an engineering "submittal" (Docket No. 113, Pls. Memo. at 11, 6;

Docket No. 110, Apostolopoulos Decl., Exs. G, H).  The Jupiter Documents essentially were not

published to make their designs obvious to the general public (see Docket No. 113, Pls. Memo. at

11, 13) or to plaintiffs.  Thus, as to obviousness, plaintiffs' motion also should be **granted**.

        D.      Sixth Affirmative Defense

      Plaintiffs next argue the fact that the PTO examiner failed to cite pertinent prior art does

not invalidate the patents (Docket No. 113, Pls. Memo. at 24) and the PTO's failure to cite prior

art is not a basis for invalidity of the patents (Docket No. 143, Pls. Reply Memo. re Novelty at

11).  Furthermore, as argued regarding obviousness, the PTO did consider the Jupiter Documents

and the secondary materials defendants now cite and deemed them not to be prior art.  Thus,

deference remains with the findings of the PTO as to the validity of the patents the PTO

examined.  Thus, plaintiffs' motion for judgment dismissing the Sixth Affirmative Defense

should be **granted**.

        E.      Tenth Affirmative Defense

      Finally, plaintiffs stated that they did not known the import of the Tenth Affirmative

Defense, that plaintiffs' claims are barred "to the extent that the content at issue in this case is not

the subject of valid patents" (Docket No. 91, Corrected 2d Am. Ans., at 6), and, if the defense

exists at all, it was subsumed in paragraphs (a) and (c) of the Third Affirmative Defense previously addressed (Docket No. 113, Pls. Memo. at 25), or is co-extensive with the Third Affirmative Defense (Docket No. 143, Pls. Reply Memo. re Co-Invention at 11) discussed above. Defendants agree that the arguments supporting the Third Affirmative Defense also apply to the Tenth Affirmative Defense (Docket No. 126, Pls. Memo. at 25).

Given the disposition of the Third Affirmative Defense and defendants' failure to meet the heavy evidentiary burden to overcome the presumption of validity for these patents, the Tenth Affirmative Defense also should fall; plaintiffs' motion for judgment to that effect also should be **granted**.

## CONCLUSION

Based upon the above, it is recommended that plaintiffs' motion (Docket No. 100) for partial summary judgement to dismiss so much of defendants' Third Affirmative Defense in their Second Amended Answer (Docket No. 91, at page 4, paragraph (b)) regarding co-inventionship should be **granted**.  Plaintiffs' motion for declaratory judgment should be **granted in part** regarding denying defendants' co-invention claims but **denied in part** as to whether plaintiffs defrauded the Patent and Trademark Office.

Plaintiffs' motions (Docket No. 109) for partial summary judgment to dismiss so much of defendants' Third Affirmative Defense concerning confirmation of novelty and non-obviousness of the patents herein should be **granted** and dismissal of the Sixth Affirmative Defense and Tenth Affirmative Defense should be **granted**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

22

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        August 4, 2011