UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SAFESPAN PLATFORM SYSTEMS, INC.,
LAMBROS APOSTOLOPOULOS, and
PAUL KRISTEN INC.,

                   Plaintiffs,

vs.                                             Case No. 06-CV-726 A

EZ ACCESS, INC., ANASTASIOS G. HATSIOS,
BRIDGEPLATFORMS, INC., GEORGE HATSIOS
and LINDA LEE NOLTEE,

                   Defendants.

_____


## SAFESPAN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO PRECLUDE


Michael J. Berchou
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, New York 14203
(716) 847-8400
mberchou@phillipslytle.com

Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ......................................................................................... II

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ......................................................................................................... 2

    A.    The Patents-in-Suit (U.S. Patent Nos. 6,135,240 and 6,302,237)........................... 2

    B.    Summary of Mr. Throckmorton's Expert Report ..................................................... 4

        i.    Background and Qualifications......................................................................... 4

        ii.    Lost Product Markup (Sales Price Erosion)...................................................... 5

        iii.    Reasonable Royalties/Incremental Profits ....................................................... 7

PROCEDURAL BACKGROUND.................................................................................. 8

LEGAL STANDARDS ................................................................................................. 8

POINT I           DEFENDANTS MISAPPREHEND THE REQUIREMENTS FOR
EXPERT REPORTS UNDER RULE 26........................................................ 10

POINT II         MR. THROCKMORTON'S EXPERT OPINION WITH
RESPECT TO REASONABLE ROYALTIES SHOULD NOT
BE PRECLUDED.......................................................................................... 11

POINT III       MR. THROCKMORTON'S EXPERT OPINION WITH
RESPECT TO LOST PRODUCT MARKUP/PRICE EROSION
SHOULD NOT BE PRECLUDED ................................................................. 14

POINT IV       MR. THROCKMORTON'S EXPERT OPINION WITH RESPECT
TO INCREMENTAL PROFITS SHOULD NOT BE PRECLUDED ........... 17

CONCLUSION............................................................................................................. 18

# TABLE OF AUTHORITIES

Page

**CASES**

*Brooktree Corp. v. Advanced Micro Devices, Inc.*,
   977 F.2d 1555 (Fed. Cir. 1992)..............................................................................14

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
   279 F. Supp. 2d 325 (S.D.N.Y. 2003)....................................................................12

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)......................................................................................8, 9, 11

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
   836 F.2d 1320 (Fed. Cir. 1987)...............................................................................9

*DSU Med. Corp. v. JMS Co.*,
   471 F.3d 1293 (Fed. Cir. 2006).............................................................................17

*Gutierrez v. Wells Fargo & Co.*,
   No. C 07-05923 (WHA), 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010)................9

*Harkabi v. SanDisk Corp.*,
   No. 08 Civ. 8203(WHP), 2012 WL 2574717 (S.D.N.Y. June 20, 2012) ...............10

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010), *aff'd on other grounds*, 131 S. Ct. 2238 (2011)......................9

*In re Eastman Kodak Company*,
   No. 12-10202 (ALG), 2013 WL 4413300 (Bankr. S.D.N.Y. Aug. 15, 2013) .........12

*In re High Pressure Laminates Antitrust Litig.*,
   No. 00 MDL 1368(CLB), 2006 WL 931692 (S.D.N.Y. Apr. 7, 2006) ...................11

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*,
   103 F. Supp. 2d 268 (S.D.N.Y. 2000).....................................................................12

*Joseph S. v. Hogan*,
   No. 06 Civ. 1042(BMC)(SMG), 2011 WL 2848330 (E.D.N.Y. 2011)...................11

*Kaufman Co. v. Lantech, Inc.*,
   926 F.2d 1136 (Fed. Cir. 1991)...............................................................................10

*King Instrument Corp. v. Otari Corp.*,
   767 F.2d 853 (Fed. Cir. 1985).................................................................................15

*Lam, Inc. v. Johns-Manville Corp.*,
   718 F.2d 1056 (Fed. Cir. 1983)...........................................................................9, 10

*Milos Misha Subotincic v. 1274274 Ontario Inc.*,
   No. 10-01946 (AG), 2013 WL 3964994 (C.D. Cal. Apr. 9, 2013)..........................17

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*,
   976 F.2d 1559 (Fed. Cir. 1992)..........................................................................15

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..........................................................................11

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
   282 U.S. 555 (1931)...............................................................................................9

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
   308 F.3d 1193 (Fed. Cir. 2002)..........................................................................11

*TWM Mfg. Co. v. Dura Corp.*,
   789 F.2d 895 (Fed. Cir. 1986)............................................................................15

*Uniloc USA, Inc. v. Microsoft Corp.*,
   632 F.3d 1292 (Fed. Cir. 2011)....................................................................12, 14

*United States v. Mejia*,
   545 F.3d 179 (2d Cir. 2008)...............................................................................13

*Vulcan Eng'g Co. v. FATA Aluminum, Inc.*,
   278 F.3d 1366 (Fed. Cir. 2002)..........................................................................14

*W.R. Grace & Co. v. Intercat, Inc.*,
   60 F. Supp. 2d 316 (D. Del. 1999).....................................................................15

*Walsh v. Chez*,
   583 F.3d 990 (7th Cir. 2009) .............................................................................10

*Yarway Corp. v. Eur-Control USA, Inc.*,
   775 F.2d 268 (Fed. Cir. 1985)............................................................................15

## OTHER AUTHORITIES

4 Hon. Robert B. Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS ........................9

Fed. R. Evid. 702 ..........................................................................................................8

Fed. R. Evid. 703 ........................................................................................................13

Fed. R. Civ. P. 26 .......................................................................................................10

## <u>PRELIMINARY STATEMENT</u>

Plaintiffs Safespan Platform Systems, Inc., Lambros Apostolopoulos and Paul Kristen Inc. (collectively, "Safespan") submit this Memorandum of Law in opposition to defendants' motion to preclude the testimony of Safespan's damages expert, Ray I. Throckmorton.

Defendants have not engaged a damages expert, did not even conduct Mr. Throckmorton's deposition, and offer no rebuttal evidence.  Instead, defendants misrepresent the contents of Mr. Throckmorton's expert report and ignore voluminous documents and 94 pages of financial calculations upon which the expert report is based.  In large part, defendants question Mr. Throckmorton's conclusions, not his methodology, which goes to the weight, not the admissibility, of his unrebutted opinion.

Of course, Mr. Throckmorton's expert report is not required to replicate every word he might say on the stand, but only to convey the substance of his opinion.  Safespan will offer Mr. Throckmorton's testimony, documentary evidence, and party and non-party testimony in support of its damages claim.  The appropriate means for defendants to challenge Mr. Throckmorton's expert opinion – given defendants' failure to conduct his deposition or to engage a rebuttal damages expert – is through vigorous cross-examination, not preclusion of his testimony.

Accordingly, Safespan respectfully submits that defendants' motion should be denied in its entirety.

## BACKGROUND

**A.      The Patents-in-Suit (U.S. Patent Nos. 6,135,240 and 6,302,237)**

The patents-in-suit relate to bridge platforms erected beneath the deck of a bridge to support laborers performing work on the bridge structure.  Fig. 1 below illustrates bridge platforms (30, 30', 30", 30''') (highlighted in yellow) secured by vertical support cables (32) to a bridge deck or roadway (12) (highlighted in blue).



Safespan's bridge platform system includes individual flooring panels (160a, 160b) resting upon horizontal cables (70a, 70b) (highlighted in green) which extend beneath the bridge, as shown in Fig. 8 below.



The flooring panels can be repeatedly assembled and disassembled through the use of "connector assemblies" (commonly referred to as "deck clips") which extend through openings in the flooring panels.  An example of a "connector assembly" which secures a flooring panel to a cable is illustrated in Fig. 11.



A portion of the connector assembly (in Fig. 11, the lower U-shaped portion 218) is extended through an opening (highlighted in red) to engage a horizontal cable (70) beneath the panel.  This simple process forms an eyelet beneath the flooring panel through which the cable passes to "releasably secure" the flooring panel to the cable.

An example of a Safespan deck clip is shown below:



An example of an infringing deck clip manufactured, sold and offered for sale by defendant

Bridgeplatforms (and earlier by defendant EZ Access)[1] is shown below:



This Court has already determined that defendant Bridgeplatforms has for many years

infringed Safespan's patents (Docket Nos. 226, 235).  Indeed, defendants' entire business is

founded upon Safespan's intellectual property.

**B.**     **Summary of Mr. Throckmorton's Expert Report**

A summary of Mr. Throckmorton's opinions is set forth at pages 5-11 of his expert report

(attached hereto as Ex. 1), and a summary of his damages calculations is set forth at pages 1-2 of

the fifth attachment to his expert report (attached hereto as Ex. 2).[2]

**i.**     **Background and Qualifications**

Mr. Throckmorton is the founder of R[3]T Consulting Group, LLC and a partner and co-

founder of AmiCOUR IP Group, LLC (2007-2010), both of which provide litigation support

services.  Between 2001 and 2007, he served as an independent litigation consultant.  Prior to

---

[1] During the course of this litigation, and without notice to the plaintiffs or the Court, defendant EZ Access transferred all of its assets (including its manufacturing equipment, computers and records) to defendant Brideplatforms.  No consideration was paid to EZ Access for these assets, and EZ Access was left insolvent (*see,* Docket No. 186, at 24-26; Docket No. 184, Ex. F, at 30 and Ex. G, at 26-28).

[2] Safespan has attached Mr. Throckmorton's expert report for the Court's convenience. Exs. 1 and 2 hereto are also attached as Ex. D to the Affirmation of Linda H. Joseph, sworn to March 31, 2014 (Docket No. 251-1).

that, Mr. Throckmorton served as a Director at BDO Seidman, PricewaterhouseCoopers, and McGladrey & Pullen (Throckmorton Decl. ¶ 2).[3]

Mr. Throckmorton is a CPA and holds an MBA from Illinois State University.  He is a member of the Licensing Executive Society and its Intellectual Assets Reporting Standards Committee, and has published numerous articles with respect to patent litigation, patent valuation, royalties and other matters (*Id.* ¶ 3; Ex. 1, Attachment 1).

As set forth in his CV, he has been involved in more than 300 cases and testified in approximately 24 matters including intellectual property, accounting for business combinations and securities matters, among others (*Id.* ¶ 4; Ex. 1, Attachment 1).[4]

Mr. Throckmorton reviewed voluminous documents and deposition transcripts in preparing his report (Ex. 1, Attachment 4) and conducted numerous interviews of Safespan witnesses, including Safespan's Vice President of Sales, David Malcolm, and its Chief Financial Officer, Thomas Lauber (Throckmorton Decl. ¶¶ 7-8).[5]

### ii.       Lost Product Markup (Sales Price Erosion)

Mr. Throckmorton opines that Safespan suffered damages of $5,070,541 as a result of lost product markup (*i.e.* sales price erosion) as a direct consequence of Bridgeplatforms' infringement.  It is undisputed that Bridgeplatforms flooded the market with its hardware

---

[3] The Declaration of Ray I. Throckmorton, sworn to April 21, 2014 and submitted herewith, is referred to herein as "Throckmorton Decl."

[4] Defendants ignore Mr. Throckmorton's CV and instead point to a single trademark case in his list of engagements (Ex. 1, Attachment 2).  However, Attachment 2 includes only those matters in which Mr. Throckmorton gave trial or deposition testimony during the last four years, as required by the Federal Rules.

[5] Defendants contend that Mr. Throckmorton talked to a single Safespan witness, David Malcolm, for a period of only 45 minutes (Docket No. 251-6, at 3).  In fact, Mr. Throckmorton had a face-to-face meeting and numerous telephone discussions with Safespan employees (Throckmorton Decl. ¶¶ 7-8).

catalogue and installation booklet.  In its summary judgment decision, this Court held in no

uncertain terms that these documents offered for sale infringing bridge platform system:

> If a reasonable jury read Claim 1 first and then, hypothetically, read a copy of
> Bridgeplatforms' Installation Booklet and Hardware Catalogue with the
> word "Bridgeplatforms" redacted, then it would conclude that plaintiffs wrote those
> documents.  No reasonable jury would conclude otherwise (Docket No. 226, at
> 18).

Based on a detailed review of many Safespan project files, particularly those on which

defendants also bid; based on discussions of relevant facts and documents with various Safespan

witnesses; based on his review of documentation produced by defendants with respect to their

bids, offers to sell and sales; and based upon his review of relevant deposition transcripts, Mr.

Throckmorton concluded – on a project by project basis – that Safespan was forced to

significantly discount its pricing, thereby reducing its profit (Ex. 1, at 5-8).  In some cases,

Safespan was forced to negotiate for projects on the basis of specific component prices, which

was not Safespan's practice for projects on which Safespan did not have to contend with an

infringing bid from defendants (Ex. 1, at 6).

Mr. Throckmorton did not opine generally that Safespan would have captured some

additional percentage of the market if defendants' infringing system had not been offered for

sale.  Instead, Mr. Throckmorton determined specific discounts/lost mark ups provided by

Safespan to customers as a result of defendants' infringement, as summarized in his 94-page

Summary of Damages (Ex. 2).  From a much larger list of projects, Mr. Throckmorton provided

his opinion with respect to lost mark-up based on 21 different bridge platform projects, after

eliminating projects for which there were missing entries, a high proportion of installation labor

costs, or any potentially conflicting data, for example (Ex. 1, at 7).

Mr. Throckmorton took steps to test the reasonableness of the data he used in preparing his report.  Among other things, he conducted additional analyses to determine the reasonableness of the spread being claimed between the "original bid" and the final, reduced price in response to defendants' competing bid (*see,* Ex. 1, at 6-8).  In doing so, Safespan's damages expert analyzed five projects in which Bridgeplatforms was not involved to validate the reasonableness of the project losses claimed and to set a limit on the amount of lost markup attributable strictly to the value of the patented aspects of the bridge platform system, as distinct from other attributes such as service, goodwill or salesmanship (*Id.*, at 7).

The result is an opinion that Safespan suffered lost product markup in the amount of $5,070,541, as reflected in the Summary of Damages on page 1 of Ex. 2, for which detailed calculations are provided at pages 3 through 93.

### iii.  Reasonable Royalties/Incremental Profits

In addition to lost product mark up, Mr. Throckmorton calculated reasonable royalties under two alternative scenarios, as well as an incremental approach for profit Safespan may have made had Safespan made all of Bridgeplatforms' infringing sales.

In determining reasonable royalties, Mr. Throckmorton considered the license terms offered by Total Containment Systems ("TCS"), statistics relating to royalty rates in the construction industry generally (not a "rule of thumb" as falsely claimed by defendants), and all 15 *Georgia-Pacific* factors.

The three alternative damages calculations result in total damages owed to Safespan for defendants' infringement ranging between $5,610,948 and $7,817,166 (inclusive of lost product markup of $5,070,541), as reflected in Ex. 2, at 1.

## PROCEDURAL BACKGROUND

This motion is the latest in a series of efforts by defendants to block evidence related to the damages that Safespan sustained as a result of defendants' infringing conduct. Rather than engage a rebuttal expert or conduct discovery, defendants have engaged in extensive motion practice in an attempt to preclude the introduction of evidence related to lost profits sustained by Safespan due to defendants' confirmed infringement, all of which has been squarely rejected by this Court.

Defendants first sought preclusion of evidence related to lost profits damages in 2011, on the basis that Safespan allegedly failed to comply with discovery demands with respect to such documents (Docket No. 160). In a December 20, 2011 Report & Recommendation, defendants' request was denied (Docket Nos. 178, 212). Less than one month later, defendants filed another motion to compel production of documents related to Safespan's lost profits damages (Docket No. 180), followed by yet another motion in March 2012 again seeking to preclude evidence of lost profits (Docket No. 209). Magistrate Judge Scott again denied defendants' request for preclusion of lost profits evidence (*Id.*). Defendants then moved for reconsideration, and that motion was also denied (Docket No. 225).

## LEGAL STANDARDS

Under Rule 702 of the Federal Rules of Evidence, expert testimony is admissible if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

More succinctly, expert testimony is admissible under Federal Rule of Evidence 702 if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow*

*Pharm., Inc.*, 509 U.S. 579, 597 (1993).  "[T]he rules of evidence do not demand perfection.

Rather, a court need only determine whether the reasoning and methods underlying the expert

testimony are reliable, and whether they have been properly applied to the facts." *Gutierrez v.*

*Wells Fargo & Co.*, No. C 07-05923 (WHA), 2010 WL 1233810, at *11 (N.D. Cal. Mar. 26,

2010).

As the Supreme Court explained in *Daubert*, the District Court must focus on the

principles and methodology employed by the expert, without regard to the conclusions the expert

has reached.  *Daubert*, 509 U.S. at 595.  "When the methodology is sound, and the evidence

relied upon sufficiently related to the case at hand, disputes about the degree of relevance or

accuracy (above this minimum threshold) may go to the testimony's weight, but not its

admissibility." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd on*

*other grounds*, 131 S. Ct. 2238 (2011).

An expert need only demonstrate damages with reasonable certainty, not mathematical

precision:

> The trial court is required to approximate, if necessary, the amount to which the
> patent owner is entitled.  "In such case, while the damages may not be determined
> by mere speculation or guess, it will be enough if the evidence shows the extent of
> the damages as a matter of just and reasonable inference, although the result be
> only approximate."

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1327 (Fed. Cir. 1987), quoting

*Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931); *see, also,* 4

Hon. Robert B. Sand, et al., MODERN FEDERAL JURY INSTRUCTIONS, Instruction 86-34 (2012)

("Reasonable certainty does not required proof of damages with mathematical certainty.").

Furthermore, "when the amount of the damages cannot be ascertained with precision, any doubts

regarding the amount must be resolved against the infringer." *Lam, Inc. v. Johns-Manville Corp.*,

718 F.2d 1056, 1065 (Fed. Cir. 1983); *see, also*, *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136,

1141 (Fed. Cir. 1991) ("Any doubts regarding the calculatory precision of the damage amount

must be resolved against the infringer.").  In addition, "any adverse consequences must rest on

the infringer when the inability to ascertain lost profits is due to the infringer's own failure to

keep accurate or complete records." *Lam*, 718 F.2d at 1065.

## ARGUMENT

## POINT I

## DEFENDANTS MISAPPREHEND THE REQUIREMENTS
## FOR EXPERT REPORTS UNDER RULE 26

Defendants mischaracterize the nature and requirements of expert reports required by

Rule 26.  The purpose of expert disclosure rules, such as the rule requiring expert reports, is to

"avoid surprise or trial by ambush."  *Harkabi v. SanDisk Corp.*, No. 08 Civ. 8203(WHP), 2012

WL 2574717, at *3 (S.D.N.Y. Jun. 20, 2012) (internal quotation marks omitted).  Thus, the

"purpose of an expert's report 'is not to replicate every word that the expert might say on the

stand,' but 'to convey the substance of the expert's opinion ... so that the opponent will be ready

to rebut, cross-examine, and to offer a competing expert.'"  *Id.*, at *4 (quoting *Walsh v. Chez*,

583 F.3d 990, 994 (7th Cir. 2009) (ellipsis in original).

Indeed, Rule 26 "does not limit an expert's testimony simply to reading his report.  The

rule contemplates that the expert will supplement, elaborate upon, explain and subject himself to

cross-examination upon his report."  *Harkabi*, 2012 WL 2574717, at *4 (internal quotation

marks omitted).  Therefore, although an expert may not testify to new theories that are not

disclosed in an expert report, an expert can "offer 'evidentiary detail' at trial for opinions

expressed in the expert's report."  *Id.* at *3 (collecting cases).  Accordingly, contrary to

defendants' assertions, an expert report is not required "to contain all of the supporting data

within its four corners so long as the report clearly explains its methodology." *Joseph S. v. Hogan*, No. 06 Civ. 1042(BMC)(SMG), 2011 WL 2848330, at *4-5 (E.D.N.Y. 2011).

Moreover, defendants' allegations concerning supposed deficiencies in the content of Mr. Throckmorton's expert report, if valid, would go to weight rather than admissibility. *See, e.g., Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1219 (Fed. Cir. 2002) (finding that alleged flaws in expert report, including issues regarding hypothetical licensing negotiations and failure to account for revenue from related products, go to weight and not admissibility), *abrogated on other grounds by Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). The appropriate method for defendants' allegations to be addressed is through the adversary process, not by exclusion of Safespan's expert testimony. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

If defendants believe Mr. Throckmorton has used inappropriate sources or information, or failed to account for certain factors, they will have the opportunity to cross-examine him at trial. Exclusion of his analysis altogether, however, would deprive the jury of helpful information that requires specialized knowledge. Seeking to exclude his testimony even before it is offered is improper. *See, e.g., In re High Pressure Laminates Antitrust Litig.,* No. 00 MDL 1368 (CLB), 2006 WL 931692, at *1 (S.D.N.Y. Apr. 7, 2006) (objections raised by plaintiff were "specifically the kind of objections that can be raised to a jury, during cross-examination").

## POINT II

### MR. THROCKMORTON'S EXPERT OPINION WITH RESPECT TO REASONABLE ROYALTIES SHOULD NOT BE PRECLUDED

Defendants' principal criticism of Mr. Throckmorton's royalty calculation appears to be his reliance on license terms offered by TCS for a bridge platform system, and his consideration

(alternatively) of publicly available construction industry royalty rates.  Defendants do not

suggest that there are other, more appropriate licenses or royalty rates, but contend that there is

no "typical" construction contract or license, and that the use of construction industry rates is a

prohibited "rule of thumb" under *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir.

2011).  Defendants' contentions should be rejected.

### A.  Consideration of the TCS License

Mr. Throckmorton bases his opinion on reasonable royalties, in part, on license terms

offered by TCS (Ex. 1, at 8-9).  This is the only comparable bridge platform license known to the

parties (defendants do not suggest otherwise), and Safespan's employees explained the TCS

licensing terms to Mr. Throckmorton.  To the extent defendants claim that Mr. Throckmorton

should not have relied upon this license, or that his assumptions are incorrect, defendants

question his conclusions, not his methodology, which goes to weight, not admissibility.

In support of their motion to preclude reasonable royalty damages, defendants rely

primarily upon a copyright case relating to the "lost license" theory of actual damages, *Country

Rd. Music, Inc. v. MP3.com, Inc.,* 279 F. Supp. 2d 325 (S.D.N.Y. 2003) (Rakoff, J.).  However,

Mr. Throckmorton does not attempt to implement the "lost license" theory, and *Country Rd.

Music* has no application here.[6]

---

[6] Defendants also cite *In re Eastman Kodak Company*, 2013 Bankr. LEXIS 3325, 2013
WL 4413300 (Bankr. S.D.N.Y. Aug. 15, 2013), and  *Johnson Elec. N. Am. Inc. v. Mabuchi
Motor America Corp.,* 103 F. Supp. 2d 268 (S.D.N.Y. 2000).  *Eastman Kodak* is a bankruptcy
case relating to the valuation of the Kodak patent portfolio in which the Court found the expert's
valuation to be wholly unreliable.  Among other things, the expert based his valuation on
revenue from Kodak's most valuable digital imaging patents that were sold prior to his report.
The case has no application here.  Likewise, *Johnson Elec.* is cited for the unremarkable
proposition that expert testimony may be excluded if it does not have "some reliable basis for
extrapolating from the available data." *Id.* at 283.  That may be true, but the case has no
application here.

**B.**     **Mr. Malcolm's Unremarkable Testimony Does Not Contradict the Expert Report**

Defendants also contend that Mr. Throckmorton's royalty calculation "represents a complete break with the record evidence." (Joseph Aff. Ex. D, at 4). This contention is based upon defendants' mischaracterization of the unremarkable testimony of a Safespan employee to the effect that Safespan may submit bids to more than one contractor or subcontractor in connection with a single bridge project (*Id.,* Ex. E, at 35-38 and 219). Certain assumptions are made in connection with all expert opinions and Mr. Throckmorton has assumed in this case that a bridge platform represents 10 percent of a typical contract. This assumption is reasonable and is based upon Mr. Throckmorton's discussions with Safespan employees (Throckmorton Decl. ¶ 13). Defendants offer no alternative numbers, and Mr. Throckmorton is subject to cross-examination with respect to all of his assumptions.

**C.**     **Comparison of TCS and Safespan Platforms**

To the extent defendants claim Mr. Throckmorton should have laid out in his expert report a detailed comparison of the non-infringing TCS bridge platform system with Safespan's patented system, there is simply no requirement that he do so in his expert report, and defendants will have the opportunity to cross-examine him at trial with respect to this issue.

**D.**     **Reliance on Hearsay**

To the extent defendants' motion is premised upon the claim that Mr. Throckmorton has relied upon hearsay evidence, it is likewise without merit. Under the Federal Rules of Evidence, experts are clearly permitted to rely on hearsay in forming their opinions. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."); *United States v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008) ("Under Rule 703, experts can testify to

opinions based on inadmissible evidence, including hearsay, if experts in the field reasonably

rely on such evidence in forming their opinions.") (internal quotation marks omitted).

E.      **Consideration of Construction Industry Royalty Rates**

Defendants' criticism of Mr. Throckmorton's consideration of publicly available

information on construction industry royalty rates is likewise without merit.  The "rule of thumb"

rejected in *Uniloc* was a number, 25 percent of expected profits, that was commonly used to

determine reasonable royalties across all industries and markets, and for all types of patented

inventions, without regard to the specific facts of a case. *Uniloc*, 632 F.3d at 1312-15.  Mr.

Throckmorton did not start with 25 percent, or any other rule of thumb; he started (in one

alternative scenario) with a royalty rate for licensing in the construction industry.  Defendants

attempt to twist this information into a challenge to Mr. Throckmorton's methodology, but in

reality they challenge only his decision to use "construction industry" rates, which goes to

weight, not admissibility.


## POINT III

### MR. THROCKMORTON'S EXPERT OPINION WITH RESPECT TO LOST PRODUCT MARKUP/PRICE EROSION SHOULD NOT BE PRECLUDED

A patentee can recover price erosion damages if it is more likely than not that, if there

had been no infringement, the patentee would have been able to charge higher prices for some of

its products.  *Vulcan Eng'g Co. v. FATA Aluminum, Inc.*, 278 F.3d 1366, 1377 (Fed. Cir. 2002)

(the patentee "must establish the amount of price reduction, and that the price was reduced in

response to the competing bid"); *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d

1555, 1580 (Fed. Cir. 1992) (affirming price erosion damages in view of testimony of patentee's

employee demonstrating 30 percent reduction in price upon infringer's entry into the market);

*Minnesota Min. & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1578-79

(Fed. Cir. 1992) (affirming award of lost profits for price erosion; "[a]lthough damages may not

be based on speculation, they need not be proved with unerring precision either"); *TWM Mfg.*

*Co. v. Dura Corp.*, 789 F.2d 895, 902 (Fed. Cir. 1986) (affirming an award of price erosion

damages where the accused infringer failed to rebut the patentee's showing that it had to reduce

its prices and give special discounts to compete with the infringer).

Price erosion damages need only be demonstrated to a reasonable probability. *W.R.*

*Grace & Co. v. Intercat, Inc.,* 60 F. Supp. 2d 316, 327 (D. Del. 1999), citing *Yarway Corp. v.*

*Eur-Control USA, Inc.*, 775 F.2d 268, 275 (Fed. Cir. 1985).

> The determination of price erosion damages is not, and is not expected to be,
> exact. It is enough if the evidence shows that the damages are a matter of just and
> reasonable inference, even though the result is only approximate.

*W.R. Grace & Co.,* 60 F. Supp. 2d at 327, citing *King Instr. Corp. v. Otari Corp.,* 767 F.2d 853,

863 (Fed. Cir. 1985).  In addition, "[a] patent holder may recover for price reductions incurred

both on its own sales as well as on the sales that the infringer made. In the absence of

infringement, the sales made by the infringer would have been made by the patent owner, at the

same non-reduced price, as the sales that the patent owner actually made of its own product." 60

F. Supp. 2d at 327, citing *TWM*, 789 F.2d at 902.

In this case, Safespan will present lay and expert testimony, and relevant documentation,

to establish specific price reductions due to defendants' presence in the market and offers to sell

infringing bridge platform systems for specific projects on which Safespan also bid.  In many

cases, Safespan was forced to specifically address, with specific customers, the pricing offered

by the defendants (*see, e.g.,* Joseph Aff. Ex. E, at 65-66, 125-128, 138-139).  In reaching his

opinion on lost product markup/price erosion, Mr. Throckmorton reviewed documents and

testimony relating to these specific projects and held discussions with Safespan witnesses about these projects.

Safespan does not claim broadly that it would have increased its market share but for the infringement.  It claims that it had to reduce its prices on specific projects when faced with direct competition from Bridgeplatforms.  As a result, no market analysis is required, nor any determination of demand for Safespan's bridge platform system.

Defendants ignore the facts of this specific case, and the details of Mr. Throckmorton's report, and instead rely on general legal principles relating to "market analysis" and non-infringing alternatives which do not apply or which have been accounted for by Mr. Throckmorton.  Defendants references to purported "contradictions" between Mr. Throckmorton's expert report and record evidence are the subject of cross-examination, not preclusion.[7]

Regarding non-infringing alternatives, Mr. Throckmorton specifically discusses the TCS system in his expert report, identifies it as a non-infringing system and cites to Mr. Malcolm's testimony which discusses TCS in some detail (*see, e.g.*, Joseph Aff. Ex. E, at 41-42).  Thus, Mr. Throckmorton did consider in preparing his report the only non-infringing alternative identified by the parties.  Safespan will present testimony at trial, if necessary and appropriate, to address non-infringing alternatives.

---

[7] For example, defendants contend that Mr. Throckmorton bases his lost product markup opinion on only two projects, the Hackensack Bridge and the Ogdensberg Bridge (Docket No. 251-6, at 13-14).  The statement is not true, and it is difficult to decipher the basis for the statement, but it is clearly not an attack on Mr. Throckmorton's methodology, but instead a claim that assumptions he made are contradicted by the record - which is properly within the scope of cross-examination, not preclusion.  Another example is defendants' claim that Mr. Throckmorton "ignored the other 57 projects on which Plaintiffs base their lost profit/price erosion claim" (*Id.*, at 15).  Again, this unsupported claim is difficult to decipher, as the projects on which Mr. Throckmorton bases his damages calculation are clearly set out in his expert report and damages summary.

Neither *DSU Med. Corp. v. JMS Co.,* 471 F.3d 1293 (Fed. Cir. 2006), nor *Milos Misha Subotincic v. 1274274 Ontario Inc.*, No. 10-01946 (AG), 2013 WL 3964994 (C.D. Cal. Apr. 9, 2013), supports defendants' motion.  In *DSU Med.*, the District Court excluded expert testimony relating to the sale by defendant of a *non-infringing* product (in addition to the award plaintiff received for sales of an infringing device) on a "notion" of "accelerated market entry." 471 F.3d at 1308.  The decision has no application to the facts of the present case.

*Milos Misha Subotincic* cites *DSU Med.* for the general proposition that demand for the patented product and non-infringing alternatives must be considered in a lost profits case, but there is no indication of the nature of the lost profits claim, or any suggestion that it is based on price erosion/price reductions. 2013 WL 3964994, at *14-15.  It has no application to the facts of this case.

## POINT IV

### MR. THROCKMORTON'S EXPERT OPINION WITH RESPECT TO INCREMENTAL PROFITS SHOULD NOT BE PRECLUDED

At page 11 of his expert report (Ex. 1), and pages 1-2 of his summary of damages (Ex. 2), Mr. Throckmorton summarizes his calculations of the incremental profits Safespan might have made had Safespan made all of Bridgeplatform's infringing sales.

At trial, Safespan will limit its proof with respect to incremental profits to those specific projects on which both Safespan and Bridgeplatforms bid, but which were ultimately awarded to defendants.  As expressed above in connection with lost product markup damages, this project-by-project analysis eliminates the need for a market analysis, and the jury would be asked to decide the question of whether it is more likely than not that Safespan would have made the sale but for defendants' infringement.

**<u>CONCLUSION</u>**

Safespan respectfully requests that the Court deny defendants' motion to preclude in its

entirety.

Dated:  Buffalo, New York
      April 21, 2014

                                     PHILLIPS LYTLE LLP

                                     By:____s/ Michael J. Berchou_____
                                            Michael J. Berchou
                                     One Canalside
                                     125 Main Street
                                     Buffalo, NY  14203-2887
                                     (716) 847-7078
                                     mberchou@phillipslytle.com

                                     Attorneys for Plaintiffs

Doc #01-2768992.5